STATE OF WEST VIRGINIA

*In re* **N.H., H.H.-1, H.H.-2, J.B., and J.H.**

**No. 19-1127** (Cabell County 17-JA-102 – 17-JA-105 and 19-JA-157)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner Mother S.H., by counsel Paula L. Harbour, appeals the Circuit Court of Cabell County's November 6, 2019, orders terminating her parental rights to N.H., H.H.-1, H.H.-2, J.B., and J.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Robert E. Wilkinson, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2017, the DHHR filed a child abuse and neglect petition alleging that petitioner participated in a prepetition treatment plan with the DHHR to address her mental health issues and provide adequate housing and care for N.H., H.H.-1, H.H.-2, and J.B. However, according to the DHHR, petitioner was "kicked out" of her temporary housing provided by a family member and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as two children share the same initials, we refer to them as H.H.-1 and H.H.-2, respectively, throughout this memorandum decision. Finally, we note that the circuit court entered an order terminating petitioner's parental rights to J.H. on November 6, 2019, and, for the purposes of appeal, re-entered its August 7, 2019, order terminating petitioner's parental rights to N.H., H.H.-1, H.H.-2, and J.B. on the same day. Petitioner's appeal makes no distinction between these orders and assigns error to the termination of her parental rights to all five children.

failed to return to take custody of the children the following day as planned. The DHHR alleged that petitioner abandoned the children and took emergency custody of them.

At an adjudicatory hearing in July of 2017, the circuit court found that petitioner's untreated mental health issues affected her ability to parent and adjudicated her as an abusing parent. Thereafter, petitioner was granted a post-adjudicatory improvement period, which required that she participate in parenting and adult life skills classes and acquire and maintain mental health treatment. Additionally, petitioner was required to obtain suitable housing, a secure source of income, and reliable transportation. In October of 2018, after several months of services, the parties agreed that petitioner would relinquish her guardianship rights to the children and exercise visitation while the children were in a relative foster placement. The circuit court accepted petitioner's relinquishment of her guardianship rights. However, in December of 2018, the guardian moved to modify the final dispositional order because the children were removed from the relative placement and issues arose with petitioner's visitations. The circuit court limited petitioner's visitation and set a hearing on the guardian's motion.

In July of 2019, the DHHR filed an amended petition alleging that petitioner gave birth to J.H. at thirty-five weeks of gestation and the child suffered some complications at birth. Petitioner did not disclose her ongoing abuse and neglect proceeding to hospital staff and was discharged from the hospital with the child. The DHHR alleged that the conditions existing at the filing of the initial petition persisted due to petitioner's failure to comply with the family case plan and J.H. was at risk of abuse and neglect in petitioner's care.

The circuit court held a dispositional hearing regarding petitioner's four older children and an adjudication hearing for J.H. in August of 2019. Following the presentation of evidence, the circuit court found that J.H. "was born with drugs in his system" and that petitioner "misled hospital staff about the status of her [rights with respect to her other] children." Further, the court found that the "conditions that led to the filing of the initial petition in this case still exist and [J.H.] would be exposed to those conditions for as long as he [was] in [petitioner's] care." The circuit court noted multiple issues that prevented petitioner's reunification with the children: "supervised visits show that [petitioner] cannot control all four children;" petitioner "never completed a parenting class or adult life skills class;" and "[t]he transportation needs for the children [were] very high and [petitioner] [had] no ability to provide them with transportation." The circuit court also considered the "filthy conditions of the home and children after extended visits" as evidence that petitioner could not care for the children. The court reasoned, "[o]ver the [past] 27 months [petitioner] has demonstrated that she [was] not capable of car[ing] for these children and she has not been able to learn the skills needed [to care] for them." Further, the court found that "[t]he [DHHR] has extended the request for . . . services five times to try to assist [petitioner] to establish herself so that the children can be returned to her," which "more than met its [burden to make] reasonable efforts [to reunify the family] . . . in this case, as well as any expectations that would be added for a person with a mental health diagnosis under the Americans with Disabilities Act." Based upon these findings, the circuit court adjudicated J.H. as a neglected child and petitioner as an abusing parent. Further, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the welfare of the children. The circuit court terminated petitioner's parental rights to N.H., H.H.-1, H.H.-2, and J.B. by order entered

November 6, 2019. Also in November of 2019, the circuit court held a dispositional hearing for J.H. and, based upon the foregoing findings, terminated petitioner's parental rights to this child by a separate order also dated November 6, 2019. Petitioner now appeals the circuit court's orders terminating her parental rights to the children.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights because she substantially complied with the terms of her family case plan and corrected the conditions of neglect.[3] Petitioner avers that she was granted Social Security income benefits, which constituted a stable income, and that she obtained stable housing. Further, petitioner asserts that she learned to utilize public transportation and, therefore, fulfilled her transportation requirement. Upon our review of the record, we find petitioner is entitled to no relief on appeal.

---

[2]As mentioned above, petitioner appeals two separate orders both entered on November 6, 2019, which, in totality, terminate her parental rights to all five children at issue in this appeal. According to the parties, the parental rights of the children's respective fathers were terminated below, except for H.H.-2's father, who failed to complete an improvement period and is awaiting disposition. N.H. and H.H.-1 were placed in a foster home together, and their permanency plan is adoption in that home. J.B. and J.H. were placed in a foster home together, and their permanency plan is adoption therein. The permanency plan for H.H.-2 is reunification with her father or the concurrent plan of placement with and adoption in the foster home of her siblings J.B. and J.H.

[3]Both of petitioner's assignments of error on appeal challenge the circuit court's termination of her parental rights and will be addressed simultaneously.

West Virginia Code § 49-4-604(b)(6) (2019)[4] provides that a circuit court may terminate a parent's parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(c)(3) (2019) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, petitioner failed to fully comply with the conditions of her family case plan. As found by the circuit court, petitioner failed to complete services required by the case plan, such as adult life skills and parenting classes. Although petitioner argues that she obtained suitable housing and could utilize public transportation to transport the children, the record contains no support for these statements on appeal. Rather, the circuit court found that petitioner's home and the children were "filthy" following their extended visitations and that petitioner could not meet the children's "very high" transportation requirements. Moreover, the circuit court noted that petitioner could not control the children during visitations. We have held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Petitioner's inability to care for the children or to learn strategies to care for them after twenty-seven months of services fully supports the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future. The DHHR provided petitioner ample opportunity for improvement in this case, but the conditions of abuse and neglect persisted despite these efforts. The children would continue to be endangered in petitioner's care, and, therefore, it was necessary for their welfare to terminate petitioner's parental rights.

Finally, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

---

[4]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As the circuit court's findings are supported by the record, we find no error in the circuit court's orders that terminated petitioner's parental rights to the above-named children.

Lastly, we recognize that proceedings against H.H.-2's father in the circuit court are still ongoing. As such, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6) (2019)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 6, 2019, orders are hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison